**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| SOUND AROUND, INC., ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| ) | |
| ANHUI LIGHT INDUSTRIES ) | |
| INTERNATIONAL CO., LTD.; ) | |
| YOAU ELECTRIC CO. LTD.; ) | |
| ) | |
| Defendant. ) | |

_____

## COMPLAINT

Plaintiff Sound Around, Inc. ("Plaintiff" or "Sound Around") sues Defendants, ANHUI LIGHT INDUSTRIES INTERNATIONAL CO., LTD. ("Anhui") and YOAU ELECTRIC CO. LTD. ("Yoau") (together, "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.     This is an action for fraud, tortious interference and civil RICO arising from Defendants' unlawful collusion with at least one of Plaintiff's former buyers, Moises Friedman ("Friedman"), to defraud Sound Around.

## PARTIES

2.     Plaintiff Sound Around, Inc. is a New York corporation with its principal place of business in Brooklyn, New York. Sound Around operates a consumer goods business that sources and imports foreign products for distribution and resale within the United States, among other places.

3.     Defendant Anhui Light Industries International Co., Ltd. is a Chinese corporation

with its principal place of business in China that manufactures goods for foreign trade, including

trade in the United States.

4.    Defendant Yoau Electric Co. Ltd. is a Chinese corporation with its principal place

of business in China that manufactures goods for foreign trade, including trade in the United States.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1332 because Plaintiff is a citizen of New York and Defendants are citizens of China and

the amount in controversy exceeds $ 75,000.00.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to the claims that are the subject of this action occurred in

this district.

## FACTUAL BACKGROUND

7.    Sound Around was founded in 1977 by Zigmond Brach ("Mr. Brach") who, along

with his two sons, Jerry Brach ("Jerry") and Abraham Brach ("Abe"), still operates the business

today.

8.    Sound Around's business involves the sourcing and importation of foreign products

for distribution and resale through e-commerce channels.

9.    In 2013, Sound Around hired Friedman, *Abe's brother-in-law*, initially as a

warehouse manager.

10.    A few years after he began his employment with Sound Around, Friedman

transitioned into a new role as a "Buyer" for Sound Around—where his responsibilities included,

among other things, sourcing merchandise and goods for resale and, importantly, negotiating the

purchase price Sound Around would pay manufacturers like Defendants for the goods being

purchased by Sound Around.

11.    Friedman and Sound Around memorialized this relationship in a written contract executed on June 6, 2018 ("Friedman Contract"), a certified translation of which is attached hereto as **Exhibit A.**

12.    The Friedman Contract specifies (among other things) Friedman's responsibilities as Buyer, and sets forth his obligation to:

> "[H]unt and search for all merchandise and goods and the likes, that he see an opportunity to turn a good profit on; this includes both, to buy goods from other merchants, and to manufacture goods from scratch, known as creating a private brand for the enterprise, – and when he finds such goods in either of the aforementioned ways, then he has to take the first step with those merchants, or with the manufacturers, to negotiate with them about the quality of the goods and about the price of the goods, or for manufacturing the goods, it should be for the best price; as well as about shipping the goods."

*See* Ex. A, Friedman Contract, ¶ 6.

13.    Defendants Anhui and Yoau were two of the manufacturers with whom Friedman directly negotiated for the purchase of products on behalf of Sound Around, for shipment to and sale in New York, among other places.

14.    Sound Around's relationship with Anhui dates back to at least 2017.

15.    From 2017 through recently, Sound Around has paid Anhui over $57,000,000 as a result of the products being sold to Sound Around by Anhui.

16.    Sound Around's relationship with Yoau also dates back to at least 2017.

17.    From 2017 through recently, Sound Around has paid Yoau over $52,000,000 as a result of the products being sold to Sound Around by Yoau.

18.    Unbeknownst to Sound Around, however, sometime after Friedman began to act as Sound Around's Buyer, each defendant began to collude with Friedman in an effort to defraud Sound Around and cause Sound Around to overpay millions for the products being purchased by

Friedman on Sound Around's behalf from Defendants.

19.    Defendants began paying Friedman ***millions in bribes*** in return for orders of goods and products Sound Around did not need and/or in return for allowing Defendants to overcharge Sound Around ***millions of dollars***—all at the expense of Sound Around and Sound Around's customers in the United States.

20.    Upon information and belief, all of the monies paid to Friedman by Defendants were transferred via wire to accounts belonging to Friedman, and/or companies owned or controlled by Friedman, at financial institutions in the United States, including New York.

21.    Each of the Defendants were aware that their actions were unlawful (civil and criminally) in both China and the United States and knowingly, intentionally and deceitfully chose to conceal from Sound Around their unlawful kickback arrangement and enterprise with Friedman.

22.    In fact, after Sound Around terminated Friedman in early 2024 as a result of discovering that Friedman had been defrauding Sound Around for years, Sound Around initiated an internal investigation and contacted many of its manufacturers to inquire about whether any of them had been paying Friedman (among others of its Buyers) kickbacks. Aware of their unlawful conduct under the laws of China and the United States, each of the Defendants lied to Sound Around and denied having paid Friedman any kickbacks.

23.    With the passage of time, Sound Around learned that Defendants were in fact involved in an enterprise with Friedman to defraud Sound Around and that millions had been paid by Defendants to Friedman to ensure that Friedman allowed and facilitated Defendants' bad acts against Sound Around.

24.    As stated above, Defendants—together with Friedman—knowingly concealed the scheme from Sound Around for years, with the specific intent that Sound Around would,

unknowingly, continue overpaying and overbuying products from Defendants.

25.    As a direct result of their unlawful scheme with Friedman, Defendants induced Sound Around to significantly overpay millions of dollars for products and to over-purchase products from Defendants.

26.    Sound Around has paid millions of dollars to each of the Defendants that Sound Around would not have paid but for Defendants' unlawful actions and collusion with Friedman.

27.    Of course, almost immediately after Friedman was terminated by Sound Around in early 2024 and Defendants had no further use for Friedman with respect to Sound Around's purchases, Defendants stopped paying Friedman kickbacks and bribes.

28.    As previously stated, Defendants' kickbacks and bribes violate a number of criminal laws in China and the United States.

29.    For example, New York's commercial bribery statute, NY Penal Law § 180.03, states the following:

> A person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars. Commercial bribing in the first degree is a class E felony.

30.    As a direct result of Defendants' unlawful actions, Sound Around has been harmed and injured and has suffered millions of dollars in damages.

## CLAIMS FOR RELIEF

### COUNT I
### FRAUD
### (As to All Defendants)

31.    Sound Around repeats and realleges paragraphs 1 through 30 as if fully set forth

herein.

32.    In order to induce Sound Around to purchase goods from Defendants at inflated prices and quantities, Defendants omitted material facts and lied to Sound Around, intentionally concealing from Sound Around (for years) that Defendants had reached an unlawful side arrangement with Friedman and were actively paying Friedman significant amounts in kickbacks and commercial bribes.

33.    Each of the Defendants began concealing, hiding, and otherwise omitting the truth of their unlawful scheme with Friedman from the moment their respective schemes began, through as recently as 2025.

34.    At all times that the Defendants lied and hid the existence of their unlawful scheme with Friedman from Sound Around, Defendants knew that they were omitting material facts related to the existence of the scheme with Friedman from Sound Around.

35.    Defendants lied, hid, and concealed material facts regarding the unlawful scheme with Friedman for the payment of kickbacks and bribes from Sound Around with the specific intent to defraud Sound Around and so that it would, in reliance on their concealment of the true facts, act in a way that was detrimental to Sound Around, while highly beneficial to Defendants.

36.    But for Defendants' material omissions, lies, and concealment of the truth of their unlawful scheme and payment of kickbacks and bribes to Friedman, Sound Around would not have (among other things) continued to pay Defendants inflated prices for products or over-purchased products.

37.    Sound Around reasonably and justifiably relied on Defendants' material omissions, lies, and concealment of the truth of the unlawful scheme and payment of kickbacks and bribes to Friedman to its detriment, suffering millions of dollars in damages and greatly impacting and

harming its business operations.

38.     As a direct and proximate result of Defendants' fraudulent omissions, lies and concealment of the true facts, Sound Around has suffered, and will continue to suffer, substantial damages that exceed tens of millions of dollars, exclusive of the punitive damages that Sound Around will also be requesting.

**COUNT II**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(As to All Defendants)**

39.     Sound Around repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

40.     Sound Around entered into a contractual relationship with Friedman as a Buyer for Sound Around (specifically, the Friedman Contract), which required Friedman to, among other things, negotiate with manufacturers on Sound Around's behalf in Sound Around's best interest and for the lowest prices to maximize Sound Around's profits. *See, e.g.*, Ex. A at ¶¶ 5, 6.

41.     At all relevant times, Defendants were aware of the contractual relationship between Friedman and Sound Around.

42.     Defendants intentionally helped, procured, facilitated, and caused Friedman to breach his contractual obligations to Sound Around by paying kickbacks and commercial bribes to Friedman.

43.     Friedman breached his contractual obligations to Sound Around by, among other things, and in exchange for collecting those unlawful kickbacks and bribes from Defendants, intentionally failing to negotiate with Defendants for the lowest possible prices for Sound Around and, instead, causing Sound Around to pay inflated prices to Defendants and over-purchase products from Defendants.

44.     Defendants' actions were taken for a wrongful purpose and in bad faith, and Defendants used dishonest, unfair, and improper means to interfere with Sound Around's contractual relationship with Friedman.

45.     Defendants had no justification for their actions.

46.     As it relates to Sound Around's commercial relationship with Defendants, Friedman would not have been able to breach his contractual and fiduciary duties with Sound Around had it not been for Defendants' actions in paying kickbacks and commercial bribes to Friedman.

47.     As a direct and proximate result of Defendants' dishonest, unfair, and improper acts of interference with Friedman's contract with Sound Around, Sound Around significantly overpaid for products, incurred unnecessary expenditures for products, lost significant profits, and suffered other harm to its business, resulting in substantial damages that exceed tens of millions of dollars, exclusive of the punitive damages that Sound Around will also be requesting.

### COUNT III
### CIVIL RICO
### (As to All Defendants)

48.     Sound Around repeats and realleges paragraphs 1 through 30 as if fully set forth herein.

49.     Defendants, acting in association with Friedman and other unnamed co-conspirators, formed an illegal association-in-fact and engaged in a pattern of racketeering activity, the principal objections of which were, among other things: (1) to deprive Sound Around of property and profits; and (2) to conceal their unlawful conduct from Sound Around and others.

50.     Defendants, with criminal intent and through a pattern of racketeering activity, operated the association-in-fact that constituted a criminal enterprise (the "Enterprise"), which

functions from New York and China, and which affected interstate commerce.

51.    The Enterprise had an ascertainable structure and hierarchy that set it apart from the mere commission of predicate acts set forth herein, and that form a pattern of racketeering activity.

52.    Defendants operated and controlled an enterprise within the meaning of 18 U.S.C. § 1961(4).

*The RICO Enterprise*

53.    The Enterprise was an association-in-fact where its members (each of the Defendants, Friedman, and others) functioned as a continuing unit over a substantial period of time in a pattern of acts to achieve the objects of the Enterprise.  Defendants' common purpose in using and operating the Enterprise were: (1) to pay substantial kickbacks and bribes to Friedman at Sound Around's expense, (2) to ensure Sound Around kept ordering from Defendants, (3) to overcharge Sound Around for Defendants' products, (4) to induce Sound Around to purchase excess products, and (5) to conceal the true facts from Sound Around and its owners, among others.

54.    With respect to Defendant Anhui, the primary managers who operated the Enterprise were Anhui and Friedman who operated for their own benefit.

55.    With respect to Defendant Yoau, the primary managers who operated the Enterprise were Yoau and Friedman who operated for their own benefit.

56.    From the beginning, Defendants' activities were designed to prevent detection and prosecution.

57.    The Defendants, Friedman, and their unnamed co-conspirators fraudulently concealed (and continue to fraudulently conceal) the true facts from Sound Around about the Enterprise and its impact on Sound Around.

9

58.     Defendants have also intentionally obstructed (and continue to obstruct) Sound Around's ability to determine the full extent of the conduct of the Enterprise.

59.     Defendants have, for the duration of the Enterprise, been responsible for overseeing the scheme, and directing others to take actions necessary to accomplish the Enterprise's overall purposes.

*The Pattern of Racketeering Activity*

60.     With respect to Defendant Anhui, from *at least* 2019/2020, continuing through the present, Defendant Anhui engaged in a pattern of racketeering activity.

61.     With respect to Defendant Yoau, from *at least* 2022/2023, continuing through the present, Defendant Yoau engaged in a pattern of racketeering activity.

62.     Specifically, Defendants' scheme constituted multiple and repeated violations of (at a minimum and likely among multiple other laws) New York's commercial bribery statute, NY Penal Law § 180.03.

63.     Defendants participated in the scheme or artifice knowingly, willfully, and with the specific intent to deceive and/or defraud Sound Around and/or others.

64.     Defendants agreed to "conduct or participate in the conduct" of the Enterprise's affairs through a "pattern of racketeering activity" which the Defendants knew would include a scheme to harm Sound Around.

65.     As to Defendant Anhui, in furtherance of their scheme, and as described herein, Anhui paid commercial bribes and unlawful kickbacks to Friedman in violation of New York law on numerous occasions from at least 2020 through early 2024 (shortly after Sound Around terminated Friedman).

66.     As to Defendant Yoau, in furtherance of their scheme, and as described herein,

Yoau paid commercial bribes and unlawful kickbacks to Friedman in violation of New York law on numerous occasions from at least 2022 to 2024 (shortly after Sound Around terminated Freidman).

67.    Each of the commercial bribes Defendants paid Friedman was in furtherance of the conspiracy to conduct the Enterprise.

68.    As to Defendant Anhui, from at least 2020 and continuing to the present, Defendant Anhui, in furtherance of the objects of the Enterprise, planned to, took steps to, and has actively concealed its wrongful deeds and continues to obstruct Sound Around's investigation of the same.

69.    As to Defendant Yoau, from at least 2022 and continuing to the present, Defendant Yoau, in furtherance of the objects of the Enterprise, planned to, took steps to, and has actively concealed its wrongful deeds and continues to obstruct Sound Around's investigation of the same.

70.    The allegations herein constitute unlawful, related, and continued predicate acts by Defendants. The conduct of Defendants described herein constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

71.    Sound Around was directly and proximately injured in its business and property by reason of Defendants' violations.

72.    Sound Around's injuries were a direct, proximate, and reasonably foreseeable result of Defendants' violations of 18 U.S.C. § 1961, because Sound Around was the target and victim of Defendants' unlawful Enterprise. Defendants actively concealed these activities from Sound Around for years.

73.    Sound Around was an "innocent person" in this matter. Sound Around in no way benefited from the operation of the Enterprise — rather, Sound Around was specifically harmed by the operation of the Enterprise, and was the Enterprise's intended victim.

74.    Sound Around is entitled to an award of damages in an amount to be determined at trial, trebled, plus interest. Sound Around is also entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sound Around seeks judgment against Defendants as follows:

a)  An award of damages in an amount to be determined at trial, including without limitation direct, consequential, actual, incidental, compensatory as well as the reasonable attorneys' fees and expenses Sound Around has been forced to incur as a result of Defendants' wrongdoing;

b)  An award of punitive damages;

c)  Pre and Post-Judgment Interest;

d)  Injunctive Relief; and

e)  Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Sound Around demands trial by jury for all issues so triable.

Dated: April 7, 2025                Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Marisa Marinelli*
787 Seventh Avenue
New York, NY 10019
(212) 513-3200
Marisa.Marinelli@hklaw.com
Attorneys for Plaintiff Sound Around, Inc.

Jesus E. Cuza (*PHV to be submitted*)
Florida Bar No. 428991
Email: jesus.cuza@hklaw.com
Rebecca Canamero (*PHV to be submitted*)
Florida Bar No. 86424
Email: rebecca.canamero@hklaw.com
Annelise Del Rivero *(PHV to be submitted)*

Florida Bar No. 1003234
Email: annelise.delrivero@hklaw.com
701 Brickell Avenue, Suite 3300
Miami, Florida 33131