UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                          :
SOUND AROUND, INC.,                       :        25cv2877 (DLC)
                                          :
                      Plaintiff,          :        OPINION AND
                                          :          ORDER
            -v-                           :
                                          :
ANHUI LIGHT INDUSTRIES INTERNATIONAL      :
CO., LTD. and YOAU ELECTRIC CO. LTD.      :
                                          :
                      Defendants.         :
                                          :
---------------------------------------- X

APPEARANCES:

For plaintiff:

Jesus E. Cuza
Rebecca Canamero
Annelise Del Rivero
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131

Marisa Marinelli
Holland & Knight LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019

For defendant Anhui Light Industries International Co., Ltd.:

Wei Wang
Glacier Law LLP
41 Madison Avenue, Suite 2529
New York, NY 10010

Kevin J. O'Connor
Peckar & Abramson, P.C.
1325 Avenue of the Americas, 10th Floor
New York, NY 10019

For defendant Yoau Electric Co., Ltd.:

Kaleb McNeely
Christopher G. Karagheuzoff
Dorsey & Whitney LLP
51 West 52nd Street
New York, NY 10019

DENISE COTE, District Judge:

Sound Around, Inc. ("Sound Around") has sued two Chinese manufacturers, Anhui Light Industries International Co., Ltd. ("Anhui") and Yoau Electric Co., Ltd. ("Yoau"),[1] from which it purchased products for resale.  Sound Around alleges that Anhui and Yoau gave kickbacks to its former buyer, Moises Friedman.  The defendants have separately moved to compel arbitration or dismiss the first amended complaint ("FAC") for failure to state a claim.  Anhui has also moved to dismiss the FAC for lack of personal jurisdiction.  For the reasons below, the defendants' motions to compel arbitration are granted and this action is stayed.

## Background

The following facts are alleged in the FAC.  These allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.

---

[1] Yoau's name was changed in March 2024 to Jiangsu Yoau Intelligent Technology Co., Ltd.

2

Sound Around locates products manufactured abroad, including in China, for distribution and resale on online retail platforms.  In 2017, Friedman began working as a buyer for Sound Around.  He was responsible for sourcing products and negotiating with manufacturers regarding prices, quantities, and shipping of products.  Friedman and Sound Around memorialized a Hebrew-language contract that described those obligations on June 6, 2018.

Anhui and Yoau are Chinese manufacturers with whom Friedman, on Sound Around's behalf, negotiated for the purchase of products.  Sound Around had begun working with Anhui and Yoau by 2017.  Sound Around purchased over $57 million in products from Anhui and over $52 million in products from Yoau.  These purchases were made pursuant to sales contracts.

While working as a buyer for Sound Around, Friedman made arrangements with Anhui and Yoau that they would pay him bribes, or "kickbacks."  These were transferred via wire to New York accounts belonging to Friedman or companies Friedman controlled, or were paid in the form of discounts on products Friedman was purchasing outside of his work for Sound Around.  In exchange, Friedman, among other things, abstained from doing business with "honest" manufacturers who would have offered favorable products and prices to Sound Around.

3

In early 2024, Sound Around terminated Friedman's employment after discovering that he had built a competing business while working for Sound Around.  Sound Around asked certain manufacturers, including Anhui and Yoau, whether they had paid Friedman kickbacks.  Anhui and Yoau denied doing so.

Friedman's competing business is the subject of a related action, Case No. 24cv1986.  That action was filed by Sound Around on March 15, 2024 against Friedman, another former buyer named Shulim Eliezer Ilowitz, and several companies that are controlled by or worked with Friedman or Ilowitz.  Sound Around alleges in that action, among other things, that Friedman and Ilowitz violated the law by developing brands and product lines for their competing business.  The parties in that action are currently briefing motions for summary judgment.

Sound Around filed this action against Anhui and Yoau on April 7, 2025.  On August 24, Anhui filed a motion to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P., or, alternatively, to compel arbitration.  On August 25, Yoau filed a motion to compel arbitration and a separate motion to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.

Sound Around amended its complaint on September 26.  The FAC brings a claim under the Robinson-Patman Act, 15 U.S.C.

§ 13(c); a claim of tortious interference with Sound Around's contractual relationship with Friedman; a claim of tortious interference with Sound Around's business relationship with Friedman; and a claim of fraud.

The defendants filed renewed motions on October 24.  Anhui again filed a motion seeking dismissal pursuant to Rule 12(b)(2) and Rule 12(b)(6), Fed. R. Civ. P., or, alternatively, to compel arbitration.  Yoau again filed a motion to compel arbitration and a separate motion to seeking dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Both Anhui and Yoau submitted evidence that their sales of products to Sound Around were subject to contracts that contained arbitration clauses.

Anhui's motion is supported by an August 20, 2025 declaration of the Manager of its Business Department, which states that shipments from Anhui to Sound Around were made pursuant to a series of sales contracts beginning in December 2016, and that each of those sales contracts followed the same template.  A sales contract dated December 1, 2020 is attached as a representative example.  It contains the following arbitration clause:

> All disputes arising from the execution of, or in connection with this S/C, shall be settled amicably through friendly negotiation[.]  In case no settlement can be reached through negotiation, the case shall then be submitted to China International Economic and Trade Arbitration Commission ["CIETAC"] in Beijing for

<u>arbitration</u>.  The arbitral award is final and binding upon both parties.

(Emphasis supplied.)

Attached to Yoau's motion to compel arbitration are many sales contracts between Sound Around and Yoau that were entered into between 2022 to 2024.  Recent agreements contain the following arbitration clause:

<u>Any dispute</u> arising from or <u>in connection with this Contract shall be submitted</u> to China International Economic and Trade Arbitration Commission (CIETAC) <u>for arbitration</u> which shall be conducted in accordance with the CIETAC's arbitration rules in effect at the time of applying for arbitration.  The place of arbitration and/or hearing is CHINA.  The arbitral award is final and binding upon both parties.

(Emphasis supplied.)  Earlier agreements contain a similar arbitration clause, with the only difference being that they stated that "[t]he place of arbitration and/or hearing is Geneva" instead of China.  Yoau has also attached CIETAC's arbitration rules, effective as from January 1, 2024.  Article 6.1 of those rules states as follows: "CIETAC has the power to determine the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case.  Such power is delegated to the arbitral tribunal once it is formed."

Sound Around filed oppositions on November 14.  Sound Around does not contest the defendants' assertions that its sales to Sound Around were subject to sales contracts that

contained arbitration clauses.  The defendants filed replies on December 1.

## Discussion

Section 2 of the Federal Arbitration Act ("FAA") mandates that agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract."  Davitashvili v. Grubhub Inc., 131 F.4th 109, 114 (2d Cir. 2025) (citation omitted).  Accordingly, courts must "rigorously enforce arbitration agreements according to their terms."  Id. at 115 (citation omitted).

To determine whether parties agreed to arbitrate, "courts apply a standard similar to that applicable for a motion for summary judgment, that is, courts must consider all relevant, admissible evidence submitted by the parties and must draw all reasonable inferences in favor of the non-moving party."  Id. (citation omitted).  Courts also apply "ordinary state-law principles that govern the formation of contracts".  Id. (citation omitted).  This inquiry involves multiple steps.

First, a court determines "whether an agreement to arbitrate between the parties exists."  Id.  "The FAA's scope is

7

limited to agreements to arbitrate controversies that arise out of the parties' contractual relationship -- that is, controversies that were caused by the relationship." Id. at 119 (citation omitted).

Second, a court determines "whether questions of 'arbitrability'" -- in other words, whether a particular dispute is subject to arbitration -- "are for the court or the arbitrator to decide." Id. at 115. The issue of arbitrability is presumptively to be resolved by a court, but parties may delegate the question of arbitrability to the arbitrator. Id. at 117. "When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Id. (citation omitted); see also Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005).

Finally, where an arbitration agreement leaves intact a court's presumptive power to determine arbitrability, a court must determine "whether the parties' arbitration agreement covers a particular claim" based on "the factual allegations in the complaint rather than the legal causes of action asserted." Davitashvili, 131 F.4th at 119 (citation omitted). In making that assessment, courts primarily consider "whether, under

ordinary principles of contract interpretation, a particular dispute is covered by the language to which the parties agreed." Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp., 67 F.4th 107, 114 (2d Cir. 2023). "In the narrow set of circumstances where a court finds that the parties have entered into a valid and enforceable agreement to arbitrate, but the agreement is ambiguous about whether it covers the dispute at hand, the court may apply a presumption of arbitrability." Id. at 113 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010)).

Both Yoau and Anhui have shown that they entered into agreements to arbitrate with Sound Around, and Sound Around does not argue otherwise. Yoau's sales contracts contain an agreement that CIETAC will arbitrate disputes "arising from or in connection with" the contracts. Anhui's sales contracts contain an agreement that CIETAC will arbitrate "disputes arising from the execution of, or in connection with" the contracts. These arbitration agreements are within the scope of the FAA.

Yoau has also shown that its sales contracts delegated the question of arbitrability to CIETAC. The arbitration provisions stated that arbitration "shall be conducted in accordance with the CIETAC's arbitration rules in effect at the time of applying

9

for arbitration."  CIETAC's rules state that "CIETAC has the power to determine the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case."  A contract's explicit incorporation of arbitration rules that contain a provision such as this is clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator.  See Contec Corp., 398 F.3d at 208.

Anhui's sales contracts, unlike Yoau's, do not incorporate CIETAC's rules or otherwise delegate issues of arbitrability to the arbitrator.  The Court therefore proceeds to the question of whether the arbitration agreements between Sound Around and Anhui cover the claims at issue here.

They do.  As a buyer, Friedman represented Sound Around in its procurement of products from Anhui.  Friedman was responsible for negotiating the prices, quantities, and shipping of products -- that is, the terms of the sales contracts.  The alleged kickbacks arose from that relationship and conduct.  In exchange, Friedman allegedly abstained from seeking out and purchasing products from Anhui's competitors, while Sound Around continued to enter sales contracts with Anhui.  Sound Around's claims arise from the sales contracts and are brought in connection with them.

Sound Around acknowledges that the sales contracts with the two defendants contain binding arbitration clauses but argues that this litigation has "nothing to do" with those sales contracts.  Instead, according to Sound Around, this litigation only concerns a separate "bribery contract" between Friedman and each of the defendants, to which Sound Around was not a party and which contains no arbitration clause.  Sound Around argues that the sales contracts are separate from the "bribery contract" because the FAC does not allege that Sound Around overpaid or overpurchased from the defendants.

Sound Around's effort to avoid the effect of the arbitration clauses in its sales contracts with the defendants fails.  It is inconsistent with the pleadings and ignores the broad wording of the arbitration clauses.  As would be expected, the FAC asserts that Sound Around suffered economic harm due to the bribery scheme and that the scheme was "highly beneficial" to the defendants.  The FAC also pleads that Friedman was obligated to search for the "best prices" for Sound Around; that the defendants paid Friedman "millions of dollars," in exchange for which Friedman "did not arrange for Sound Around to enter into purchase agreements with other manufacturers who would have provided favorable products, prices, or deal terms for Sound

Around"; and that through this arrangement the defendants "secured an unfair competitive advantage."

Moreover, the alleged existence of a secret bribery scheme or "contract" cannot avoid the linkage between that scheme and the arbitration clauses in the sales contracts.  Sound Around agreed to arbitrate "all" or "any" dispute "in connection with" the sales contracts.  The bribes that the defendants allegedly paid to Friedman are "in connection" with the defendants' sales to Sound Around.[2]

## Conclusion

The defendants' October 25, 2025 motions to compel arbitration are granted.  The October 25 motions for dismissal are denied without prejudice.  The Clerk of Court is directed to

---

[2] Because the defendants' motions to compel arbitration are granted, it is unnecessary to reach the defendants' arguments for dismissal pursuant to Rule 12(b)(6), Fed. R. Civ. P, or Anhui's motion to dismiss based on lack of personal jurisdiction.  Although Anhui's motion to dismiss for lack of personal jurisdiction presents a "threshold" issue that "ordinarily must precede merits determinations in dispositional order," a court has "leeway" to choose among multiple "threshold grounds for denying audience to a case on the merits."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (citation omitted).

stay the case.

Dated:    New York, New York
          December 4, 2025

                                    _____
                                    DENISE COTE
                                    United States District Judge